UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAO BATISTA,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No.  2:14-cv-2441 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter for the

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1  immediate calculation and payment of benefits to plaintiff, using the amended onset date of

2  December 31, 2010.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on December 31, 2010, and for disability insurance benefits on January 5, 2011.  Administrative Record ("AR") 13 (ALJ Decision).[2]  The disability onset date for both applications was originally alleged to be January 14, 2008.  Id.  The applications were disapproved initially, and on reconsideration.  Id.  On February 26, 2013, ALJ Tamia N. Gordon presided over the hearing on plaintiff's challenge to the disapprovals.  AR 29-59 (transcript).  Plaintiff was present and testified at the hearing.  Id.  Plaintiff was represented by Ben Kuykendall, Esq., at the hearing.  Id.  Thomas Dachelet, Vocational Expert, also testified.  Id.

At the hearing, plaintiff requested that the onset date be amended to December 31, 2010, having conceded that there was insufficient evidence to establish disability prior to that date. AR 33-34, 58-59.  The ALJ took the motion under advisement, and stated that she would "make a final decision as I conclude my decision-making process."  AR 59.  However, the ALJ's decision makes no mention of the motion to amend the onset date, and simply uses the January 14, 2008 onset date.

On March 8, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 24.  On August 18, 2014, after receiving counsel's "Letter of contentions" as an additional exhibit (Exh. 15E), the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision and order receiving exhibit).

Plaintiff filed this action on October 17, 2014.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 9.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the

---

[2]  The AR is electronically filed at ECF Nos. 12-3 to 12-9 (AR 1 to AR 518).

Commissioner, have been fully briefed. ECF Nos. 15 (plaintiff's summary judgment motion), 16 (Commissioner's summary judgment motion), 17 (plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born on September 9, 1962, and accordingly was 45 years old on the original alleged disability onset date, and 48 on the amended onset date of December 31, 2010.  AR 22. The ALJ found that this made plaintiff an "individual closely approaching advanced age." Id.[3] Plaintiff has a high school education, and can communicate in English. Id.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

---

[3] Neither party challenges this finding, and it is not clear that it had any effect on the outcome, so the court does not disturb it. However, under the regulations, using either onset date, plaintiff was a "younger person" (under age 50). See 20 C.F.R §§ 404.1563(c) (2008) (age as a vocational factor), 416.963(c) (same). The court notes that plaintiff was "closely approaching advanced age" on the date of the hearing before the ALJ, having turned 50 by then.  See 20 C.F.R §§ 404.1563(d), 416.963(c).

3

court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

////

4

>    Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

>    Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

>    Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

>    Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

>    1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.
>
>    2. [Step 1] The claimant has not engaged in substantial gainful activity since January 14, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
>    3. [Step 2] The claimant has the following severe impairments: mild bilateral facet arthropathy and displacement of lumbar

5

intervertebral disc; radiculopathy of left and right hip (20 CFR 404.1520(c) and 416.920(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Residual Functional Capacity ("RFC")]  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally stoop, crouch, kneel or crawl; and, never climb ladders, ropes or scaffolds; occasional overhead reaching.

6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on September 9, 1962 and was 45 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 21-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 24.

## VI.  ANALYSIS

Plaintiff argues that the ALJ erred by failing to properly credit the opinion of Christopher

////

6

F. Amsden, M.D., plaintiff's treating physician, and failing to credit plaintiff's testimony.[4]  For the reasons set forth below, it was error for the ALJ to reject Dr. Amsden's opinion, and plaintiff's testimony.

### A. Principles Governing Consideration Of Medical Opinion Evidence

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527.  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  Even where the treating doctor's opinion is not given controlling weight,

> "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."

Orn, 495 F.3d at 632 (quoting SSR 96-2p).

In addition, if the ALJ is not giving the treating doctor's opinion "controlling" weight:

> the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, available at 61 Fed. Reg. 34,490, 34,492 (July 2, 1996).[5]

Even where, as here, the treating doctor's opinion is contradicted by another doctor's opinion, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830

---

[4] Plaintiff also argues that the ALJ failed to properly consider the opinion of Robert M. Sayad, Ph. D., a psychologist, and failed to credit third party testimony.  As discussed below, the failure to credit Dr. Amsden's opinion, and the failure to credit plaintiff's testimony, was reversible error warranting a remand for the immediate calculation of benefits.  Therefore, these additional asserted errors are not considered here.

[5] Reproduced at https://federalregister.gov/a/96-16685 (last visited by the court on September 6, 2016).

7

(9th Cir. 1996) (as amended) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Those reasons must include a weighing of "all of the factors provided" in 20 C.F.R. §§ 404.1527(c) and 416.927(c), namely, length, nature and extent of the treatment relationship; supportability; consistency; and specialization. See Orn, 495 F.3d at 632.

### B. Examinations, Treatments, Clinical Findings and Procedures

Dr. Amsden saw and treated plaintiff on November 18, 2010.[6] AR 452-56. For that visit, Dr. Amsden reviewed the March 1, 2010 MRI of plaintiff's lumbosacral spine and the radiologist doctor's reading of it, discussed his own reading of the MRI, and ordered x-rays. AR 452. Dr. Amsden conducted a physical examination of plaintiff. AR 454. He diagnosed plaintiff with "Lumbar Strain, or Strain," "Lumbar Osteoarthritis," "Lumbar Discogenic Pain," "Lumbar Facetal Syndrome," "Lumbosacral radiculopathy," "Hip Pain," and "Chronic Pain." Id. Dr. Amsden prescribed a "fentanyl patch" for "long acting pain control," "Topomax" for "nerve pain," "Nucynta" for "breakthrough pain," "Soma" for "muscle spasm," and "Naprosyn" for "inflammation." AR 454.

Dr. Amsden again saw and treated plaintiff on November 30, 2010. AR 457-59. For that visit, Dr. Amsden reviewed the November 18, 2010 x-rays of plaintiff's left hip (two views), pelvis (one view), and lumbar spine (five views). AR 457. He conducted another physical examination of plaintiff. Id. Dr. Amsden added "Norco" to plaintiff's pain medications, "for breakthrough pain." AR 458.

Dr. Amsden again saw and treated plaintiff on December 20, 2010. AR 460-62. Dr. Amsden conducted another physical examination, and continued plaintiff on his pain medications. AR 460, 461.

Dr. Amsden again saw and treated plaintiff on June 2, 1011.[7] AR 501-05. After

---

[6] This visit pre-dates the amended onset date of December 31, 2010. Each of plaintiff's visits with Dr. Amsden is recounted to show how the doctor obtained a "longitudinal picture" of plaintiff's impairment.
[7] In the interim, plaintiff was seen and treated by others, on January 12, 2011 (AR 463-64, "Julie Mallory, N.P"), February 11, 2011 (AR 465-66, Aruna Rao, M.D.), March 7, 2011 (AR 467-69, Dr. Rao), April 7, 2011 (AR 470-72, Dr. Rao), and May 3, 2011 (AR 473-75, Dr. Rao).

1   conducting another physical examination of plaintiff, Dr. Amsden conducted a "Lower Extremity
2   Electomyogram (EMG)" procedure on plaintiff.  Id.

3       Dr. Amsden again saw and treated plaintiff on June 6, 2011.  AR 476-78.  Dr. Amsden
4   conducted another physical examination, continued plaintiff on his pain medications, and
5   scheduled plaintiff for an "ultrasound exam of the bilateral hips."  AR 477.  The ultrasound was
6   conducted that day, and Dr. Amsden reviewed the study results.  Id.

7       After concluding that plaintiff had "[i]nadequate improvement with conservative care
8   techniques," on June 14, 2011, Dr. Amsden gave plaintiff a "Lumbar Selective Epidural Steroid
9   Injection," and a "Sacral Selective Epidural Steroid Injection."  AR 481-84.

10      C.  Dr. Amsden's RFC Findings

11      On February 3, 2013, Dr. Amsden completed a form setting forth his views on plaintiff's
12  impairments and limitations.  AR 514-18.  He listed the diagnostic techniques he had used in
13  diagnosing plaintiff, and the treatments he had provided to plaintiff.  AR 514.

14      Dr. Amsden concluded that plaintiff could "never" lift or carry any weight.  AR 515.  He
15  concluded that plaintiff could sit for a total of 0.5 hours, sit for a total of 0.5 hours, and walk for a
16  total of 1.0 hour in an 8 hour workday.[8]  Id.  Dr. Amsden concluded that plaintiff could
17  "occasionally" engage in "simple grasping," "fine manipulation," and could "occasionally" use
18  his feet.  Id.

19      Dr. Amsden further concluded that plaintiff could never "climb," "balance," "stoop,"
20  "crouch," "kneel," or "crawl."  AR 516.  He concluded that plaintiff could "never" engage in
21  "pushing/pulling," and could "occasionally" engage in "reaching," "handling" and "feeling."

22      If this RFC is correct, there are no jobs that plaintiff could perform, according to the
23  testimony of the Vocational Expert.  AR 57, 58.

24  ////

---

[8] The ALJ misreads Dr. Amsden's RFC as allowing 5 hours of sitting, 5 hours of standing and 10 hours of walking, or the ALJ's RFC is a scrivener's error. It would be plainly nonsensical for Dr. Amsden to opine that plaintiff can walk 10 hours in an 8 hour work day, or that he could do so despite all the pain and other symptoms he had been treating plaintiff for.

9

D. <u>ALJ Rejects Dr. Amsden's Opinion</u>

The ALJ states that he gave Dr. Amsden's opinion "[s]ome limited weight." AR 20. However, it is clear that the ALJ actually rejected Dr. Amsden's opinion. The ALJ states that plaintiff can engage in "light" work, which requires "frequently" lifting 20 pounds at a time. AR 17; <u>see</u> 20 C.F.R. §§ 404.1567(b) ("Light work"), 416.967(b) (same). In contrast, Dr. Amsden's opinion is that plaintiff can "never" lift even 10 pounds. AR 515. In addition, "light" work requires that plaintiff be able to stand or walk for a total of 6 hours in an 8 hour work day. <u>See</u> SSR 83-10, 1983 WL 31251 at *6 ("Light work"), 1983 SSR LEXIS 30 at *14. In contrast, Dr. Amsden's opinion is that plaintiff can only stand and walk a total of 1.5 hours in a work day. AR 515.

The ALJ's reasons for rejecting Dr. Amsden's opinion were (1) it is contradicted by Dr. Vesali's opinion, (2) it inappropriately relied on plaintiff's testimony, (3) it is inconsistent with plaintiff's daily activities, (4) it is inconsistent with the "routine and conservative" treatment plaintiff received, (5) plaintiff's symptoms have been controlled by medication, and (6) the opinions of what she calls "the agency physicians" are more consistent with the clinical findings. AR 22. These do not provide specific and legitimate reasons for rejecting Dr. Amsden's opinion.

       1. <u>Dr. Vesali's opinion</u>

Dr. Vesali is an examining doctor who examined plaintiff once, on November 15, 2011, and reviewed unspecified "medical records that were provided by DDS." AR 506-09. The one medical record Dr. Vesali specifically refers to is "the MRI of the lumbosacral spine," which "revealed a very small broad base disk protrusion at L5-S1." AR 509. Dr. Vesali diagnosed plaintiff with "Chronic low back pain," but opined that plaintiff had no functional limitations of any kind whatsoever. <u>Id.</u>

According to the ALJ, Dr. Amsden's opinion was "not completely supported by the record as a whole, including the examination of Board Certified Physical Medicine and Rehabilitation physician Dr. Vesali," and because "[t]he clinical signs and findings of Dr. Vesali reveal a higher level of functioning than Dr. Amsden indicates." AR 20.

////

10

1    The contrary findings and opinion of Dr. Vesali are not a sufficient basis for rejecting
2 Dr. Amsden's opinion. Rather, the existence of this contradicting opinion is what requires the
3 ALJ to give "specific and legitimate" reasons for rejecting Dr. Amsden's opinion, rather than
4 "clear and convincing" reasons. See Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).
5    In choosing Dr. Vesali's findings and opinion over those of Dr. Amsden, the ALJ failed to
6 take into consideration – or in any event failed to discuss – any of the required factors. For
7 example, the decision does not explain how Dr. Amsden's long history of examining and treating
8 plaintiff affected the determination to reject Dr. Amsden's opinion in favor of Dr. Vesali's
9 opinion, reached after a single examination. The length and frequency of Dr. Amsden's treatment
10 would appear to warrant giving Dr. Amsden's opinion greater weight than that of Dr. Vesali's, at
11 least without some explanation for failing to do so. "When the treating source has seen you a
12 number of times and long enough to have obtained a longitudinal picture of your impairment, we
13 will give the source's opinion more weight than we would give it if it were from a nontreating
14 source." 20 C.F.R. § 404.1527(c)(2)(i);[9] id. § 416.927(c)(2)(i) (same).
15    The ALJ failed to explain how Dr. Amsden's treatments of plaintiff – along with the
16 numerous physical examinations he conducted and the independent laboratory testing he ordered
17 and reviewed – figured in the decision to reject Dr. Amsden's opinion. See 20 C.F.R.
18 §§ 404.1527(c) (2)(ii) ("When the treating source has reasonable knowledge of your
19 impairment(s)," gained from treatment the doctor has provided, and examinations and testing the
20 doctor has performed or ordered from independent laboratories, "we will give the source's
21 opinion more weight than we would give it if it were from a nontreating source"),[10]
22 416.927(c)(2)(ii) (same). The ALJ failed to explain how Dr. Amsden's interpretations of the
23 numerous physical examinations he conducted, and the many laboratory findings he ordered, and
24 ////
25

---

[9] "Length of the treatment relationship and the frequency of examination." 20 C.F.R. §§ 404.1527(c)(2)((i), 416.927(c)(2)(i).
[10] "Nature and extent of the treatment relationship." 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

11

their consistency, figured in the decision to reject Dr. Amsden's opinion. See 20 C.F.R. §§ 404.1527(c)(2)(iii) (id. § 416.927(c)(2)(iiI) (same).[11]

Finally, the ALJ does not mention Dr. Amsden's specialization – Physical Medicine & Rehabilitation / Pain Medicine – nor how that figured in her decision to reject Dr. Amsden's opinion in favor of Dr. Vesali. This last omission is particularly puzzling, since the ALJ specifically mentions that Dr. Vesali has this specialization. By mentioning Dr. Vesali's specialization, the decision seems to imply that his specialization was a factor in choosing his opinion over Dr. Amsden's. But any such consideration is not warranted, since Dr. Amsden shares the same specialty. The ALJ also seems to be relying on Dr. Vesali's Board Certification in his specialty,[12] but she does not mention whether or not Dr. Amsden is also Board Certified in that specialty.

In short, Dr. Vesali's opinion provides no basis for rejecting Dr. Amsden's opinion. Rather, at most, it lowers the standard the ALJ must meet for rejecting Dr. Amsden's opinion, from the "clear and convincing" reasons standard, to the "specific and legitimate" reasons standard. Those are discussed below.[13]

### 2. Plaintiff's testimony

According to the ALJ, Dr. Amsden "apparently relied quite heavily on the subject report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 20. However, the ALJ does not offer any explanation of this statement, nor any reference to any place in the record where the court could verify this statement. A review of Dr. Amsden's treatment record and opinion shows, to the contrary, that his opinion is based upon his physical examinations of plaintiff, those of other doctors and others in his office, and laboratory findings. Dr. Amsden's recounting of plaintiff's

---

[11] "Supportability." 20 C.F.R. §§ 404.1527(c)(2)(iii), 416.927(c)(2)(iii). "Consistency." 20 C.F.R. §§ 404.1527(c)(2)(iv), 416.927(c)(2)(iv).
[12] "In addition, Dr. Vesali is Board Certified in Physical Medicine and Rehabilitation." AR 21.
[13] In describing Dr. Amsden's records, the ALJ states that "Modified work described as sedentary work mostly sitting work up to 4 hours per day was noted (Exhibit 8F, p. 20)." AR 19. However, this notation was made by a Dr. Aruna Rao, not Dr. Amsden. See AR 471. In any event, there is no evidence that plaintiff actually performed any work at this level.

1    statement of his own symptoms always appears alongside the doctor's own physical examination
2    and interpretation of laboratory results.

3    Further, the ALJ does not credit plaintiff's testimony. See AR 22. Among other reasons,
4    the ALJ relies on Dr. Vesali's statement that plaintiff was "fired" from his job, as evidence that
5    something other than disabling pain caused him to stop working. See AR 22, 506. However,
6    plaintiff never testified that his disabling pain is what caused him to stop working. He testified
7    that he was "laid off." Where a plaintiff claims he stopped working because of pain, but in fact,
8    he stopped working because he was laid off, the Commissioner is entitled to discredit his
9    testimony, especially when other factors further undermine his credibility. See Bruton v.
10   Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (plaintiff "alleged that he had been unable to work
11   since April 6, 1993, because of lower back pain, pain in his left arm, left shoulder, left leg, and
12   left foot," but in fact, he "stated at the administrative hearing and to at least one of his doctors that
13   he left his job because he was laid off, rather than because he was injured"). That is not the case
14   here. As discussed more fully below, there are no legitimate grounds for discounting plaintiff's
15   testimony, and plaintiff does not claim that he stopped working because of pain. To the contrary,
16   plaintiff alleges that his disability began nearly three years after he was laid off.

17              3. Plaintiff's daily activities[14]

18   The ALJ asserts that "[t]he claimant has described daily activities that are not limited to
19   the extent one would expect, given the complaints of disabling symptoms and limitations."
20   AR 22. Specifically:

21
> Claimant's ability to do light housework, all personal needs, some
> shopping, easy-meal preparation, walk for exercise and use public
22
> transportation, are inconsistent with the alleged presence of a
> condition that would preclude all work activity
23

ff's   AR 22 (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).[15] However, the ALJ does not
testi
mon    ---
       [14] This was also apparently a factor the ALJ used in finding plaintiff's testimony "not credible."
y      See AR 22.
       [15] Dr. Vesali's description of plaintiff's "Activities of Daily Living" is significantly at odds with
       the other evidence in the record. According to Dr. Vesali, plaintiff "does the dishes, laundry,
       sweeps, mops and vacuums." AR 506. As discussed below, the evidence is that plaintiff, at best,
       (continued…)

explain why these daily activities are inconsistent with plaintiff's asserted limitations, and they do not appear to be.

Plaintiff testified that he is in pain all the time. AR 48. This testimony is corroborated by his roommate's testimony and by Dr. Amsden's examinations and clinical findings. Although plaintiff can bathe and put his shoes on without help, AR 47, he does so while in pain. AR 309 (Adult Function Report). Plaintiff can dress and bathe himself, but those things cause him "pain." AR 290 (Third Party Function Report), 309. His sleep is constantly interrupted by pain. AR 290, 309. Hair care is difficult because the "backwards motion" causes pain. AR 290. Shaving is difficult because plaintiff cannot "stand[] to[o] long." AR 290. Using the toilet is difficult because it is "[v]ery painful sitting down + very painful standing up." AR 290. Even feeding himself is difficult because plaintiff "can't sit down throughout the full meal." AR 290, 293 ("[c]an't sit still for long periods of time without getting up or moving around d[ue] to pain").

He cannot prepare "regular meals," and can only prepare simple foods – sandwiches and frozen foods – that can be prepared in 15-20 minutes. AR 291, 310. He can do small laundry loads as long as they are not heavy, and so long as it can be done in 10-15 minutes. AR 291, 310. Plaintiff does not do house or yard work because of pain. Although plaintiff does go grocery shopping, he "depend[s] on others for rides + help carry[ing] groceries." AR 294.

The ALJ does not explain why these extremely limited daily activities – carried out while plaintiff is in pain – are inconsistent with Dr. Amsden's RFC. It is error for the ALJ to simply identify daily activities – especially the limited number identified here – without addressing how those activities, and plaintiff's pain, translate to the world of work, especially, as in this case, work that must be conducted at the "light work" level:

> ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

---

does laundry, and only in very small loads. It is not clear where Dr. Vesali got the idea that plaintiff "sweeps, mops and vacuums."

Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).

### 4. Treatment plaintiff received[16]

According to the ALJ:

> The claimant has not received the type of medical treatment one would expect for a person alleging such incapacitating symptoms. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature.

AR 22. Once again, there is no citation to the record for the court to be able to verify this assertion, nor does the ALJ indicate what she means by "routine and conservative" treatment. The court's review of the treatment records shows that Dr. Amsden and others prescribed, among other things, "Duragesic" (a "fentanyl" patch), "Norco" (hydrocodone), and "Nucynta" (tapendatol). See AR 454, 458. These are not "routine" or over-the-counter medications. They are powerful opioid (narcotic) pain medications.[17]

In addition, plaintiff was given epidural steroid injections. AR 481-82. This, especially when considered along with the powerful narcotics prescribed, does not appear to be "routine" or "conservative" treatment. See Garrison, 759 F.3d at 1015 n.20 ("we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); see also Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (describing "over-the-counter pain medication" as "conservative treatment"), cert. denied, 552 U.S. 1141 (2008); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (describing a "recommendation to 'avoid strenuous activities' " as a "conservative course of treatment"); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (conservative treatment included physical therapy and the use of anti-inflammatory medication).

### 5. Symptoms controlled by medication

The ALJ asserts that plaintiff's symptoms were controlled by medication. Once again,

---

[16] This was apparently another factor the ALJ used in finding plaintiff's testimony "not credible." See AR 22.

[17] See, e.g., Molter v. Astrue, 2010 WL 2348738 at *5, 2010 U.S. Dist. LEXIS 63024 at *17 (E.D. Cal. 2010) (Hollows, M.J.) ("a Fentanyl patch is heavy duty medication prescribed for chronic pain. www.medicinenet.com/fentanyl-transdermal/article").

there is no citation to any portion of the record showing that plaintiff's symptoms were controlled by medication. A review of the record does not show that plaintiff's symptoms were so controlled. To the contrary, the progress notes, a sampling of which follow in the notes, show that plaintiff's symptoms worsened over time or at best stayed the same. Only on one occasion are the symptoms noted to have improved.[18]

### 6. Agency physicians' opinions

The ALJ states that "[t]he residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled' (see, Exhibits 2F; 3F; 5F; 6F; 10F)." AR 22. The ALJ notes that "those physicians" were "non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians …." AR 22. Nevertheless, the ALJ afforded them "some weight." Id.

The relevant agency reviewing decisions were rendered by J. Mitchell, M.D., on September 27, 2010, prior to the amended onset date of December 31, 2010. See Exhs. 2F

---

[18] At the outset of his treatment by Dr. Amsden, plaintiff states that his "pain has gradually gotten worse over time," despite physical therapy. AR 452 (November 18, 2010). Patient "still has painful forced … rotation of the hip." AR 457 (November 30, 2010). The "pain is uncontrolled." AR 458 (same). Patient "has pain maximally for both flexion and extension in the lumbar spine." AR 460 (December 20, 2010). "Meds somewhat helpful, partially," but "[b]ack pain is still 9/10." Id. While Duragesic patches provide pain relief, he still "has difficulty with low back pain." AR 463 (January 12, 2011). "Spasms are noted in lumbar paraspinal muscles." AR 465 (February 11, 2011). Patient "was started on clonidine for burning pain," and given a "toradol injection" for a "flareup." Id. "Clonidine has not been helping for burning pain …." AR 468 (March 11, 2011). Patient experienced "[i]nadequate improvement with conservative care techniques." AR 481 (June 14, 2011). Dr. Amsden conducted "Electrodiagnostic Evaluation" of plaintiff because of "[i]nadequate improvement with conservative care measures over time." AR 502 (June 2, 2011). "Left low back facetal joint tenderness and spasms are noted in the paraspinal muscles." AR 485 (June 27, 2011). Patient reports that the "lumbar epidural block" has "increased his low back symptoms." Id. "Left low back tenderness and spasms are noted in the facetal joint area and also in the posterior hip radiating to the posterior leg." AR 488 (July 18, 2011). Patient reports that "injection at L1 SEB … did not help much for the leg pain." Id. "Left low back tenderness and spasms are noted in the paraspinal muscles." AR 490 (August 17, 2011). "The patient is having increased pain in the low back and hip." Id. ""Left low back tenderness and spasms are noted in the facetal joint area." AR 492 (September 14, 2011). Plaintiff "is having a difficult time dealing with his daily chronic pain symptoms." AR 493. Patient has "low back tenderness and spasms noted in the paraspinal muscles." AR 495 (October 11, 2011). Patient "feels that his symptoms are worsening." AR 496. Plaintiff has "low back tenderness and spasms noted in the paraspinal muscles." AR 498 (November 7, 2011). But see AR 471 (April 7, 2011, "responded well to previous lumbar epidural blocks").

(AR 413-18), 3F (419-21). The ALJ does not explain why these reviewing opinions should be accorded any weight, in light of plaintiff's allegation that his physical limitations did not begin until December 31, 2010. The other agency reviewing decisions related to plaintiff's alleged mental limitations, and do not pertain to the physical limitations addressed in this decision. See Exhs. 5F (AR 431) (Dora D. Logue, M.D., Psychiatry), 6F (AR 432-45) (Dr. Logue, "Psychiatric Review Technique"). Finally, Exh. 10F is a "Case Analysis" by "Marilyn Sanfilippo." AR 510-11. As best the court can tell from the record, Ms. Sanfilippo is a "Disability Examiner-DDS." See AR 156, 163. There is no evidence that Ms. Sanfilippo is a "physician," as the ALJ described her.

### D. Remand

For the reasons stated above, the ALJ erred in rejecting Dr. Amsden's opinion, and in not crediting plaintiff's testimony. The court is therefore authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000)).

### 1. Outstanding issues

Under the second step in the remand analysis,[19] the court must "review the record as a

---

[19] As discussed above, the first step is satisfied because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Amsden's opinion.

whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016) (quoting Treichler, 775 F.3d at 1101). This step is satisfied here. There are, for example, no inconsistencies or gaps in Dr. Amsden's treatment notes or opinion.

Although the ALJ failed to rule on plaintiff's request to amend the onset date to December 31, 2010, there is no basis in the record for denying the request, and the failure to do so appears to be a simple oversight. See Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998) ("'[i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available …. [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record'") (quoting SSR 83-20 (1983)). Moreover, on this appeal, the Commissioner offers no basis for declining to amend the onset date.

### 2. Credit as true

Under the third step, this court "must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." Dominguez, 808 F.3d at 407 (internal quotation marks omitted). Here, plaintiff would plainly be disabled if Dr. Amsden's opinion were credited as true. When asked if there any jobs plaintiff could do under Dr. Amsden's RFC, the Vocational Expert testified that there were none. AR 57, 58.

### 3. Discretion

Where the above steps are satisfied, this court must exercise its discretion in determining whether to remand for further proceedings, or for the immediate calculation and award of benefits. Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if discredited evidence were credited as true, "the district court may exercise its discretion to remand the case for an award of benefits"). If, despite satisfying the above steps, the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," the court should remand for further proceedings. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison, 759 F.3d at 1021). However, the court would

be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

The ALJ's reasons for rejecting Dr. Amsden's opinion – which is based upon a long treating and examining history and laboratory and clinical findings – are not valid. The ALJ's substantially overlapping reasons for rejecting plaintiff's testimony are not valid.[20] Dr. Vesali's opinion – based upon a single examination, and a questionable recounting of plaintiff's symptoms – provides no basis for rejecting Dr. Amsden's opinion. In short, the record before the court, including Dr. Amsden's opinion, plaintiff's testimony and that of the third party witness, leaves the court with no doubt that plaintiff is disabled.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16), is DENIED;

3. This matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits for an onset date of December 31, 2010; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: September 15, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[20] The ALJ does not mention the testimony of the third party witness, plaintiff's roommate. The ALJ offers no reason for rejecting that testimony.